IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| P.W. CAMPBELL CONTRACTING COMPANY, INC.<br><br>Plaintiff,<br><br>v.<br><br>ADMIRAL INSURANCE COMPANY,<br><br>Defendant. | No.:   3:22-cv-00864 (LEK/ML)<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, comes the Plaintiff, P.W. Campbell Contracting Company, Inc., by and through its counsel, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, and files the following Complaint:

## PARTIES

1.      Plaintiff P.W. Campbell Contracting Company, Inc. ("PWCC") is a Pennsylvania corporation with a principal place of business at 109 Zeta Dr., Pittsburgh, PA 15238.

2.      Defendant Admiral Insurance Company ("Admiral") is a Delaware corporation with a principal business address of 1000 Howard Boulevard, Suite 300: P. O. Box 5430, Mount Laurel, NJ 08054.

## JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy, excluding interest and costs, exceeds $75,000.

4.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events

and omissions giving rise to this suit occurred within this judicial district in Broome County, NY.

5.      At all times relevant to this suit, Admiral purposely established significant contacts

in New York and carried out continuous and systematic business activities in New York, including

within this judicial district in Broome County.

**FACTS**

6.      In June 2016, PWCC contracted with Visions Federal Credit Union ("Visions") to

provide renovations to Visions' office building located at 3301 Country Club Road, Endwell, NY

13760 (the "Project"), including the installation of a new roof on the office building.

7.      To complete the roofing work, PWCC subcontracted with Tower Roofing

Company, Inc. ("Tower"), a company with an address of 22 N Broad St. Johnson City, NY 13790.

8.      The subcontract between PWCC and Tower (the "PWCC-Tower Contract,"

attached here as **Exhibit A**) required Tower to purchase and maintain comprehensive general

liability insurance, including coverage for Premises and Operation, Products and Completed

Operations, Contractual Liability, Broad Form Property Damage, and Independent Contractors.

(**Exhibit A**, Section 12, pp. 8-9).

9.      The PWCC-Tower Contract also required Tower to provide additional insured

status to PWCC:

> Subcontractor will take all appropriate steps to have Contractor and Owner named as an "Insured" on each of the insurance policies obtained by Subcontractor to satisfy the requirements of this Section 12, and Subcontractor shall procure the appropriate endorsement or rider to each policy reflecting Contractor's status as an "Insured" under the policy.  Subcontractor shall, prior to commencing the work, provide evidence of insurance to Contractor, in the form of an Insurance Certificate, and the following language must appear on the Insurance Certificate(s): "P.W. Campbell Contracting Company and the Owner are named as additional insureds and completed operations coverage applies to the additional insured under the subcontractors policies. The subcontractor's policies will respond on a primary and

2

noncontributory basis on behalf of P.W. Campbell Contracting Company and the Owner."

(**Exhibit A**, Section 12, pp. 9-10).

10.     The PWCC-Tower Contract further stated: "Subcontractor [Tower] shall be responsible for and shall indemnify, defend and hold Contractor [PWCC] harmless from and against any and all losses, liability, costs, expenses (including reasonable attorney's fees) incurred, or in any way sustained or alleged to have been sustained by Contractor by reason of or in connection with Subcontractor's [Tower's] performance of or failure to perform the Work" and, among others, the "breach of any express or implied warranty." (*See* **Exhibit A**).

11.     For coverage relating to the Project, and to meet its contractual obligations, Tower obtained a Commercial General Liability Coverage Policy from Admiral (the "Admiral CGL Policy"), named PWCC as an additional insured, and provided PWCC with a Certificate of Insurance ("COI") naming PWCC as an additional insured, attached as **Exhibit B**.

12.     The COI states that "The insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies." (**Exhibit B**).

13.     The COI further states that "PW Campbell and Visions FCU are included as additional insured on a primary and non-contributory basis as required by written contract" for the job performed at "3301 Country Club Road." (**Exhibit B**).

14.     The Admiral CGL Policy, attached here as **Exhibit C**[1], states that "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend

---

[1] The Admiral CGL Policy attached here as **Exhibit C** incepted during Tower's performance of its subcontract and after the date of the COI delivered to PWCC, but it is understood to be a renewal policy whose material and relevant terms are identical to all prior and subsequent policies issued by Admiral to Tower.

the insured against any 'suit' seeking those damages." (**Exhibit C**, Commercial General Liability Coverage Form CG 00 01 04 13, Page 1 of 16).

15.     By July 2021, PWCC was aware of Visions' intent to bring a defective construction claim against it and, through its counsel, contacted Admiral on July 15, 2021, to submit a claim as an additional insured under the Admiral CGL Policy.  Admiral immediately acknowledged receipt of the claim by email on July 15, 2021.

16.     On July 19, 2021, Robert Rogers of Admiral email PWCC's counsel that the loss had been assigned to claim handler Patrick Maxwell.  PWCC's counsel responded to the email within minutes and asked Mr. Maxwell to discuss the claim.

17.     Having received no response from Mr. Maxwell, on July 29, 2021, PWCC's counsel called Mr. Maxwell and left a voicemail requesting that he contact counsel for PWCC to discuss the claim.  PWCC's counsel also sent an email to Mr. Maxwell asking for a response a few minutes after leaving a voicemail on July 29, 2021.

18.     Mr. Maxwell did not respond, but in a letter dated August 13, 2022, Eric Peterson of Custard Insurance Adjusters advised PWCC's counsel that he "represents Admiral Insurance Company and their insured, Tower Roofing," and to "direct all future correspondence regarding this matter to the undersigned."

19.     PWCC's counsel and Mr. Peterson conferenced by telephone on August 23, 2022 and September 1, 2022, and during the second telephone conference Mr. Peterson directed PWCC's counsel to direct all future correspondence to Patrick Maxwell of Admiral.

20.     PWCC's counsel emailed Mr. Maxwell urging him to respond to PWCC's claim and to clarify Admiral's coverage position with respect to PWCC's claim, whether Mr. Peterson

or Mr. Maxwell was acting as Admiral's assigned claims representative, and whether Admiral had agreed to retain experts for PWCC to evaluate the claim.

21.     In PWCC's counsel's email asking for Admiral to respond to PWCC's claim for insurance, PWCC's counsel emphasized that the matter was urgent and was growing more so by the day because, among other reasons, Visions intended to replace the roof and that, consequently, PWCC, Tower Roofing, and their experts needed to inspect the roof prior to its demolition.

22.     Mr. Maxwell responded to PWCC's counsel by email on September 8, 2022 that he was sorry for the confusion regarding who was handling the claim and that he had directed the investigation to a local adjustment company but was open to further discussing the claim.

23.     Following Mr. Maxwell's email of September 8, 2022, Mr. Peterson emailed PWCC's counsel on September 10, 2022 and advised that an expert retained by Mr. Peterson and/or Admiral, Susan Morog, could be available for the forthcoming inspection of Visions' office building and the allegedly defective roof constructed by Tower.

24.     PWCC's counsel returned to working with Mr. Peterson to prepare for the forthcoming inspection, but when PWCC's counsel asked Mr. Peterson to clarify Admiral's coverage position and specifically whether Admiral would pay for the experts necessary to conduct the inspection and to prepare to defend against Visions' claims for damages arising from Tower's allegedly defective roof construction, Mr. Peterson directed PWCC's counsel once again to Mr. Maxwell.

25.     PWCC's counsel and Mr. Maxwell eventually conferred by telephone, and although Mr. Maxwell would not provide a substantive coverage position from Admiral, he affirmed that PWCC and Tower could use the same experts and that Admiral would pay for those experts.

26.     PWCC, Tower Roofing, Mr. Peterson, and the experts jointly retained by them proceeded with the inspection of Visions' office building and held a post-inspection call on September 23, 2022 which PWCC and Tower Roofing believed to be a confidential and privileged conference regarding the results of the inspection and future handling.

27.     Following the September 23, 2022 telephone conference, PWCC's counsel attempted to communicate with Susan Morog, but Ms. Morog emailed PWCC's counsel on October 5, 2021 that "Since I am retained through Admiral Insurance all communication must go through them."

28.     PWCC's counsel immediately responded by email on that same date, copying both Mr. Peterson and Mr. Maxwell, to ask for clarification and to reiterate the importance of responding to Visions' allegations.

29.     Neither Ms. Morog, Mr. Peterson, or Mr. Maxwell responded to PWCC's counsel's October 5, 2021 email asking for clarification, and Ms. Morog has not performed any subsequent work to PWCC's knowledge despite her being represented by Admiral as PWCC's expert and her acting as such prior to, during, and following the September 2021 inspection of Visions' office building.

30.     Several weeks later PWCC learned that Admiral had appointed counsel to represent Tower roofing, and once again, on December 29, 2021, counsel for PWCC emailed Mr. Maxwell to demand that Admiral immediately appoint defense counsel for PWCC as it had done for Tower and to finally state its coverage position with respect to PWCC's claim for coverage as an additional insured under the same Admiral CGL Policy that is providing counsel to Tower.

31.     Neither Mr. Maxwell nor any other representative has responded to the December 29, 2022 email, and Admiral has never appointed counsel for PWCC.

32.     On March 25, 2022, PWCC's counsel again tendered its demand to Admiral for defense under the Admiral CGL Policy and COI, and advised Admiral that Visions intended to proceed with the roof's demolition and reconstruction and proceed with its claim against PWCC arising from Tower's allegedly defective roof construction.

33.     Admiral once again refused to respond in any way to PWCC's demand for coverage or to even acknowledge the pending claim for coverage or Visions' third-party liability claim (except to the extent that it is acting to protect itself or has appointed counsel for Tower).

34.     On May 10, 2022, Visions filed a Writ of Summons (the "Writ") in the Supreme Court of the State of New York, County of Broome, alleging breach of contract, breach of warranty, and damages in the amount of Two Million, Eight Hundred Thousand Dollars ($2,800,000.00) against PWCC (the "Action").  (The Writ is attached hereto as **Exhibit D).**

35.     On May 13, 2022, PWCC's counsel notified Mr. Maxwell that Visions had filed the Writ against PWCC and again tendered its defense to Admiral.  Again, neither Mr. Maxwell nor any other representative of Admiral responded.

36.     As of this filing, Admiral has ignored PWCC's repeated requests and refused to provide a coverage position to PWCC for more than a year.

37.     Admiral's complete disregard for its duties under the Admiral CGL Policy and COI has harmed and continues to harm PWCC.

38.     By the time Visions filed the Writ and initiated the pending civil action, PWCC had been seeking and requesting its contractually owed defense from Admiral for nearly a year.  That protection never came.

39.     Although Admiral appointed an adjuster and initially advised PWCC that Admiral would retain and pay for experts, Admiral subsequently refused to even acknowledge the pending claims.

## COUNT I – BREACH OF CONTRACT

40.     PWCC hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

41.     Admiral, by and through its employees, representatives, and agents, agreed to insure Tower through the Admiral CGL Policy for work performed at 3301 Country Club Road, Endwell, NY 13760.

42.     Admiral, by and through its employees, representatives, and agents, agreed to insure PWCC as an additional insured under its Admiral CGL Policy with Tower for work performed at 3301 Country Club Road, Endwell, NY 13760.

43.     PWCC has requested coverage from Admiral for the defense and potential indemnity of Visions' allegations in the Action.

44.     PWCC has performed any and all duties that it owes pursuant to the Admiral CGL Policy and COI.

45.     For more than one year, Admiral has refused to acknowledge or meaningfully respond to PWCC's tender relating to the underlying claims that form the basis of the Action, an action in which Visions seeks nearly $3 million in damages from PWCC as a result of Tower's allegedly defective construction.

46.     By failing to meaningfully recognize PWCC's tender, Admiral has effectively denied coverage to PWCC.

47.     By denying coverage, Admiral has failed to perform its contractual duty to honor PWCC's request for coverage and defense arising from Visions' allegations of defective construction at 3301 Country Club Road, Endwell, NY 13760.

48.     Admiral's breach of its contractual duty has caused PWCC to suffer damages in the cost of defending the Action and possible other damages.

49.     Admiral's breach of its contractual duty continues to cause PWCC to suffer damages because of the ongoing cost of defending against Visions' claims in the Action, and PWCC will suffer further damages in the form of a multi-million-dollar judgment against it that it must satisfy should Visions prevail.

WHEREFORE, P.W. Campbell Contracting Company, Inc. requests that judgment be entered in its favor and against Defendant, Admiral Insurance Company, and requests damages in an amount in excess of this jurisdiction's limits and any other relief that this Honorable Court deems to be appropriate.

## COUNT II – VIOLATION OF NY GEN. BUS. LAW § 349

50.     PWCC hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

51.     Admiral purposely offered its product – a Commercial General Liability Insurance Policy – to citizens and consumers of the state of New York and those purchasing products and services in the state of New York, including Tower and PWCC.

52.     Admiral had no reasonable basis to deny coverage and defense to PWCC – let alone to ignore PWCC's requests – particularly after agreeing to provide experts to PWCC - and therefore has acted deceptively at all times material to this lawsuit.

53.     Admiral's deceptive acts and omissions are material to New York citizens and consumers because Admiral's outright refusal to even acknowledge PWCC's repeated requests would be highly important for consumers to know when deciding from whom to purchase the kind of insurance policies offered by Admiral.

54.     At all times relevant to this Complaint, Admiral had superior bargaining power relative to either Tower or PWCC.

55.     The Admiral CGL Policy that Admiral sold and refused to honor was a standard policy with which other New York consumers are commonly presented.

56.     Under NY Gen. Bus. Law § 349, Admiral has a duty not to engage in deceptive or misleading business practices and to honor its contractual commitments to insureds and additional insureds.

57.     Admiral's violation of NY Gen. Bus. Law § 349 has caused and continues to cause PWCC damages because of the ongoing cost of defending against Visions' claims in the Action, and PWCC may suffer further damages in the form of a multi-million-dollar judgment against it that it must satisfy should Visions prevail for the amount Visions alleges in its Summons.

WHEREFORE, P.W. Campbell Contracting Company, Inc. requests that judgment be entered in its favor and against Defendant, Admiral Insurance Company, and requests an award of punitive damages, court costs, counsel fees, interest upon the amount incurred by PWCC in defending against claims in the Action, and any other relief that this Honorable Court deems to be appropriate.

## COUNT III – DECLARATORY JUDGMENT

58.     PWCC hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

59.     Admiral's refusal to meaningfully acknowledge – let alone honor – its obligations to PWCC under the Admiral CGL Policy and COI has created a justiciable and substantial controversy between Admiral and PWCC.

60.     In light of Admiral's refusal to acknowledge or honor PWCC's rights under the Admiral CGL Policy and COI, including its right to a defense in the Action, Admiral and PWCC have adverse legal positions and interests.

61.     Admiral's refusal to act pursuant to its obligations to PWCC under the Admiral CGL Policy and COI creates a need for PWCC to seek equitable relief in the form of a declaratory judgment that Admiral must honor its duty to defend PWCC with respect to Visions' claims against it in the Action and, to the extent Visions proves any of its claims in the Action against PWCC, that Admiral must indemnify PWCC.

62.     This Court's entry of a declaratory judgment as described in the preceding paragraph would finalize the controversy and offer the parties relief from uncertainty.

WHEREFORE, PWCC prays this Court to enter a judgment in favor of PWCC and against Admiral, that Admiral owes PWCC a duty to defend PWCC with respect to the claims made against PWCC by Visions in the Action, and Admiral owes a duty to indemnify PWCC for any damages arising out of PWCC's or Tower's allegedly defective roof construction on Visions' property located at 3301 Country Club Road, Endwell, NY 13760.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP


/s/ Stephen F. Raiola
Stephen F. Raiola

11

NY Id.:  916514
412-263-4373
sfr@pietragallo.com

Phillip R. Earnest (*pro hac vice* pending)
PA Id.: 83208
412-263-4374
pre@pietragallo.com

Matthew R. Barnes (*pro hac vice* pending)
PA Id.: 328771
412-263-1842
mrb@pietragallo.com

One Oxford Centre, 38th Floor
Pittsburgh, PA 15219

*Counsel for Plaintiff,*
*P.W. Campbell Contracting Company, Inc.*